We'll ask counsel for our second case to come up and get ready. It's United States v. Thaxton. Okay, this is the time for argument in United States v. Thaxton, case 23-4196. Mr. Goddard. Good morning, Your Honors. Houston Goddard on behalf of Mr. Thaxton. I would ask to reserve three minutes for rebuttal. This case asks the question whether the premises enhancement is triggered where a defendant who is selling drugs and using his home to do so moves from one home to another. Here Mr. Thaxton was initially living in Wahiawa where he was selling drugs and using his home to do so. There was no suggestion from the government, from probation, from the district court that the premises enhancement would apply under those facts. What changed is that about a year and a half into selling drugs, Mr. Thaxton moved. He left Wahiawa and moved to Honolulu and he kept doing exactly what he had been doing in Wahiawa, selling drugs and using his home to do so. The government's argument is that this move from Wahiawa to Honolulu triggers the premises enhancement. That is not what the premises enhancement is meant to target. The premises enhancement targets sophisticated drug dealers who are maintaining establishments for the purpose of distributing or manufacturing drugs. Think meth labs, think grow houses, think trap houses. These are establishments that the dealers are maintaining for the purpose of manufacturing or distributing drugs. This enhancement is not targeted at unsophisticated drug dealers such as Mr. Thaxton who have drugs in their homes because they don't have any other premises. Let me ask you. I mean there would seem to be some question in a case in which somebody only has one residence and uses their house for living in the house and also to sell drugs. But here he took out essentially a second – he moved to a different apartment and doesn't the record show that part of the reason for going there was to be closer to the drug operations in Waikiki Beach and to keep his son away from the drug dealing which is possibly laudable but reveals further the purpose of the apartment? I think it shows that he had several reasons for making the move. The question the guideline asks is what is his purpose for maintaining the premises and his purpose for maintaining the apartment that he was living there. He was also using it to sell drugs as he had been in Wahiawa. But his purpose in maintaining the apartment in Honolulu is that that is where he lived. Can't he have two purposes? Well, the guideline speaks of the purpose. And the purpose for maintaining the premises is that that is where he was living. But it doesn't say the exclusive purpose, right? I mean the commentary fills this in possibly a little bit more but just even on the text of the guideline you can do something for the purpose of A or B and it would be consistent to do both. Sure. I think here the history of the guideline is informative. To take a step back, we start with the Krakow Statute 21 United States Code Section 856 which criminalizes the use or maintenance of premises for the manufacture or distribution of drugs. Congress comes along in 2010 under the Sentencing Act and explicitly references Krakow Statute but directs the Sentencing Commission to promulgate a guideline that targets just the maintenance of premises for the purpose of manufacture or distribution of drugs. And that is what the guideline does. The guideline itself, the text, not looking at the commentary, the text itself targets just the purpose. It drops the use and says the purpose of maintaining the premises for the purpose of manufacturing and distributing drugs. What the commentary does is it expands. So from 856 to the guideline we have narrowed the scope. And then the commentary reintroduces the concept of use and impermissibly expands the guideline back out beyond the text of the statute. So if we were looking to the guideline, the enhancement, the premises enhancement, 2D1.1B12, focuses just on the purpose for maintaining the premises. And here Mr. Thackston's purpose in Wahiwa and then later in Honolulu is that that is his home. That's why he's maintaining his premise. He is using it to sell drugs. He is using it to sleep. He is using it to cook meals. He is using it to watch movies. But his purpose in maintaining his premise is that this is his home. I mean does it – do we not look at all at the volume of the drug dealing? In other words, like if he lived at the home but was running a hugely massive drug operation out of the same home, would your argument be the same? No, Your Honor. And this is where the district court appropriately acknowledged that the premise enhancement applies in a residential context only rarely. Not never, but rarely. And that would be a case where someone is maintaining a premise for the purpose of manufacturing and distributing drugs, and they happen to be living there. Think about someone who sets up a meth lab out in the desert and is cooking meth 18 hours a day and has a cot set up in the corner where they catch catnaps. That is where the dependent is living, but his purpose for maintaining that premise is to cook meth. Here, Mr. Thaxton is living in an apartment, has all of his day-to-day activities there, is close to his doctors, has his clothes there, has his toiletries there. And yes, he is using it to sell drugs. And in terms of the scope of his operation, the uncontested facts here are that he made one sale on June the 9th for a few hundred dollars worth of heroin, and two days later there was a search where they uncovered substantial amounts of methamphetamine and heroin. But that's it. There is evidence that Mr. Thaxton was receiving shipments, but there is not a fact-finding on whether the shipments were in Honolulu or to Wahiawa. There is testimony, or not testimony, but evidence from a confidential informant that Mr. Thaxton was cutting the drugs in his Honolulu apartment. That was the veracity of the confidential informant's question by defense counsel. What's the standard of review here? The standard of review here is de novo because this is a challenge to the interpretation of the guideline. Is that a challenge that was raised below? The challenge raised below was defense counsel's argument was that the court needed to apply the frequency of use analysis, which the court did not do. And so here the argument is that the court, this is the same argument and expanded, but the argument is that even if the commentary is permissible, is within the zone of ambiguity, and is permissible for the district court to look to the commentary, the district court did not follow the commentary appropriately, did not interpret the commentary correctly. Okay, so there's a couple levels to this. One is that the commentary is an invalid interpretation of the guideline under Kaiser. I did not see that argument made below. It seems actually maybe to the opposite. Defense counsel was embracing the commentary and trying to argue under the commentary. That is correct, Your Honor. That argument was not made to the district court. Okay. Is that the argument you're making here? That is one of the arguments I'm making here, yes. Okay, so that would be reviewed for plain error? Well, I believe it would be de novo, Your Honor. I could be corrected, but I believe that this is a challenge to the interpretation of the guidelines. The government has not – if I'm recalling correctly, the government has not suggested this would be plain error review. No, but we're asking. I understand that, Your Honor. We have a recent opinion where this came up, Hackett, where there was a challenge raised on appeal to the interpretation of the guideline in the commentary, and the court held that it hadn't been preserved and so reviewed it for plain error involving a loss enhancement. So this seems somewhat analogous, but you have other arguments based on the face of the commentary itself, I understand, to be saying, well, if you look at the commentary, taking it for what it's worth, you still think you win. Is that actually a legal issue, though, or is that more just the district court's application of the guideline that we would review more favorably? Well, it's a question of whether the district court appropriately understood and applied the commentary, and I would argue they did not. But even if this court were to say that the guideline is ambiguous, the commentary is within the zone of ambiguity, so we're just looking at how the district court applied it here, the factual record is a mess. What we have is a pre-sentence report that says Mr. Thaxton lives in Wahiawa and never left Wahiawa, and he set up the apartment in Honolulu solely for the purposes of selling drugs, and he never moved there. That's what the pre-sentence report says. We get to the sentencing hearing. Defense counsel says, I'd like to proffer that actually Mr. Thaxton moved to Honolulu and lived there full-time. Government says, no problem, understood, Mr. Thaxton lived there full-time, not in dispute. And then the court engages the parties under this understanding that Mr. Thaxton is living in Honolulu. That's very clear from the record. And then at the very end, the court, without making any factual findings, applies the enhancement and then says I'm adopting the pre-sentence report and the enhancement is based on those findings. And this is completely contradictory. So it's really sort of impossible to understand what this enhancement is based on. Did he give up his first residence or you're positioning he just wasn't using it? His son was living there. Okay, but it was still his property. It was his property. His son was living there, and he was living in the apartment in Honolulu. That was the proffer made and accepted in the district court. Right. So, I mean, again, I think there could be questions, maybe more difficult ones, where somebody only has one residence. But what about in the case where the person takes out a second residence? Well, I think this is a not unusual situation where a parent has a home that he owns and uses himself and a home that he is providing for an adult child. How old was the child at the time? I believe he was in his early 20s. I wouldn't swear for that, but that's my understanding. So this is not a situation where I don't think this is the same situation as where someone just happens to have two homes and uses them interchangeably. The facts here are that the facts as accepted before the district court that Mr. Thaxton had his own home in Honolulu and he provided a home for his son in Wahiawa. We've taken over your time, so why don't we put three minutes up when you come back and we'll hear from the government. Thank you. Good morning, Your Honors. May I please report, Lauren Nakamura for the United States. This essentially is a sentencing appeal where guns and drugs were found in the same drawer of an apartment used by the defendant to distribute drugs, one that he rented specifically to keep his dealings separate from his son. He admits that himself. Having properly determined the guideline range of 210 to 262 months, the court also applied the government's downward departure motion and weighed the 3553A factors and ultimately sentenced the defendant to 108 months, a little more than half of the bottom of his original guideline range. It started off with the base offense level, which was determined by an undisputed quantity of drugs. There's no abuse of discretion there. Next, the court analyzed whether the two points should be added because of a firearm. Once again, the settled and undisputed facts are you can't get to the drugs without also getting to the gun. Clearly, the two level enhancement was supported and not an abuse of discretion. Having stated its findings regarding that firearm enhancement, safety valve and zero point offender status are legally unavailable to the defendant and to suggest that this court should remand for the district court to explicitly state that these reductions don't apply is essentially asking this court to elevate form over substance. Essentially, especially in light of a sentencing transcript, which makes clear the intent of the district court, as well as in light of the district court's subsequent order on his release pending bail status, which clearly lays out that the district court did not find any substantial question of law or fact as to the firearm or premises enhancement. The intent of the premises enhancement is driven by the desire to punish those with a more established or sophisticated operation to distribute drugs. This court, along with several other circuits, has determined that you can't also use a home as essentially a place of business for drug dealing, which is why the defendants aren't protected from the enhancement merely by the fact that they also sleep there. The courts conduct an analysis to essentially determine is this a normal residence with occasional or periodic episodic dealing, or is this being used as a place of business, or is this a combination of the two? Here, the court looked at the home in Wahiawa, and also that the facts supporting that he was essentially conducting a business elsewhere, mostly for the purpose of protecting his son, along with the apartment's location near to a customer base, as well as near places where drug dealing is often commonly found. You would agree that the district court relied on the commentary? Yes. The district court did not do a Kaiser analysis, in other words, finding that the guideline was ambiguous, et cetera, et cetera. Do you think that we can do that in the first instance? First of all, was it error? And two, can we correct the error by conducting that analysis in the first instance? I think this court can determine whether or not the commentary or the guideline itself, the language of the guideline itself, is ambiguous, and then subsequently. Do you think that the guideline is ambiguous? I don't believe so at all. I mean, even if you look at the language of the guideline itself, it says the purpose of, and even though it's stated in the singular, it subsequently is followed by the manufacture or distribution, which is actually two different purposes. So I don't believe that the language is ambiguous or unambiguous to the point where that reliance on the commentary is not proper. Well, you have to find that it's ambiguous to rely on the commentary, and you're saying it's not. Well, I'm sorry. I didn't articulate that well. I'm saying that because there's a singular purpose and a multiple and followed by dual purposes, that would make it ambiguous, which is why reliance on the commentary is proper here, as well as it is a process that the courts have regularly relied upon when applying the premises enhancement. It seems that I imagine your opposing counsel will say, you know, well, manufacturing or distributing are both examples of unlawful drug behavior. That's in distinction or opposition to what would be normal residential behavior. I think the position being argued is that this provision is possibly ambiguous in terms of what it means is that you need to basically go and set up a premises specifically for drugs and really not much else other than manufacturing or distributing drugs or whether you can have a premises that shares some lawful and some unlawful activities. Yes, which is why the court below also engaged in the question and specifically asked counsel about whether or not you can have multipurposes or a singular purpose, which is where just – and also I believe in the Seventh and the Tenth Circuit, the court has noted specifically that a purpose to insulate a – or to read the guideline to mean that just because you have drugs and you also reside there would respectively eviscerate the purpose of the guideline itself because it would effectively insulate anyone who lives and also distributes or manufactures drugs out of their home. I mean, here he had two residences. Does the government commonly pursue this enhancement when somebody has only one? That I am – I don't believe that that is true. I think you can, and there is case law that suggests that even in situations where there's a singular home, the government has also pursued the same enhancement. What is the relevance, if any, of the fact that he had two residences here? I believe the relevance is exactly what you pointed out earlier in – during the earlier argument in that he had a home and it was being used at some point for him to reside in, but then specifically moved out of that home, particularly to be closer to his drug-dealing business and also used to cut drugs there and also had dealings out of that apartment. So in that sense, I think it's very clear that he maintained that apartment. Yes, he has also other purposes for it. He resides there. He sleeps there. It's close to his doctor's. But part of the purpose of maintaining that apartment was also to enhance his ability to distribute drugs to customers very close by and also to – particularly to protect his funds from the criminal liability and exposure to drug distribution, which he was conducting, which he didn't want to do at his home in Wahiawa. So, Counsel, is it your position, then, that any time any sort of drug activity happens in someone's home or out of someone's home, this should apply? No, I don't believe so, because when – which is why the commentary suggests that the court engage in a frequency analysis to determine whether or not this is – this home is actually being used more as a home with episodic dealing versus a home that is also being used as a place of business to distribute drugs. How is the frequency analysis fed around here? I mean, what – does it – was it very frequent? Was it not so frequent? And what is frequent enough? I think that is a question that would be fact-specific. And in this case, the amount of drugs found in the home, as well as the guns, as well as whatever – what the CI reported, which was corroborated subsequently in the search, all established that there was frequent drug dealing out of his home. And in that case, just because he has a room there and sleeps there that's convenient for him to get to his doctor's appointments doesn't mean that he also didn't use it specifically to deal drugs out of. Do you have a number for me in terms of the frequency? You say frequent. I don't know if that means 500, 200. I don't believe that there is a specific number that the court can reach, which is why it's a factual analysis, case-specific, that this court can review under abuse of discretion. And I think if the court has no further questions. Thank you very much. Okay, Mr. Goddard, we'll hear from you. Thank you, Your Honor. Just very briefly at the outset, opposing counsel spoke about the lower court's decision in Mr. Thackston's application for bail pending appeal. That is not properly before this court. The district court was determining Mr. Thackston's bail status, but it cannot expand the record in doing so or essentially issue an advisory opinion. Turning to the record as it has to do with the premises enhancement, government counsel spoke as though the information provided by the confidential informant in this case is true and did so in briefing as well, referring to it as, I believe, corroborated. And that's just not the case. Mr. Thackston specifically contested the confidential informant's information before the district court, both in terms of possession of the gun, which is not being challenged here, but also in terms of the confidential informant's understanding of his business operation. Government counsel says that the confidential informant's information was corroborated. It was not. The confidential informant said that the bulk of the drugs would be at the apartment in Honolulu and a smaller amount were brought to Wahiawa for cutting. That's not what law enforcement found when they executed the search warrant on both houses. There was a fair amount of drugs plus $46,000 in cash and indicia of drug distribution, no? Your Honor, I'm not disputing that this was a significant amount of drugs. I'm saying that the confidential informant's understanding of the operation that she provided to law enforcement was that the bulk of the drugs would be in Honolulu. That's where he kept the kilograms and kilograms of drugs would be in Honolulu. I apologize, in Wahiawa. And then he would bring smaller amounts to Honolulu, the apartment, to cut them and prepare them for sale and then sell them. And what law enforcement found is that there's nothing in Wahiawa but a bulk of drugs in Honolulu. So it doesn't match up. My point is that the veracity of the confidential informant was a question for the District Court for good reason, and the District Court made no determinations here. Counsel, I just want to make sure I understood.  So is Honolulu then the drug house? Honolulu is where they found the drugs, but we don't know how long they were there. That's the problem here. And the Government Council talks about how there was multiple drug sales, all this stuff. That's not supported in the record. We have one sale. We know Mr. Thaksin's was selling. We don't know where. And the question for the premises enhancement is not, is Mr. Thaksin selling drugs? Is Mr. Thaksin selling a lot of drugs? Is Mr. Thaksin selling drugs frequently? The question is, is he doing those things in the Honolulu apartment? And the record just doesn't tell us that. We have one sale, and we know there were drugs there on one day. We don't know how long they've been there. We don't know anything beyond that. That's what the record establishes in this case. And what about his testimony about, you know, moving because he wanted to keep his son away from drugs? All of that. I mean, the inference is, you know, I do this outside of my home or from my home because otherwise why would it matter that his son was living in the other home with him? Well, that's one inference. I think another inference is I'm a drug dealer. There are people who might want to harm me. There are people who might want to come after me. And if I'm living with my son, that puts my son in danger. I think there is just physical danger inherent in the business of drug dealing. Mr. Thaxton laudably tried to separate. I mean, he should have stopped selling the drugs, but he laudably tried to remove that from his son. And to tag him with a higher sentence for doing that, that's not what this enhancement is meant to do here. And I wanted to speak just briefly on this question of purpose and use. We focused a lot and the district focused a lot on Mr. Thaxton's use of the apartments, and that makes sense when we're looking to purpose. But we need to keep purpose as the one and only ultimate assessment. That is what the guideline says. What is Mr. Thaxton's purpose? It makes total sense when you're assessing purpose to look to how someone is using the apartment. But that has to be the first step. How are they using the apartment? Okay, what does that tell us about how they are, what their purpose in maintaining the premises is? What the commentary does that goes beyond the text of the enhancement is it says that you can look to just the use. You can establish that it's a primary principle use and stop there. And that's what the district court did here. All of its questions were about is this a primary principle use? Is this a primary principle use? Yes? Okay. Game over. Enhancement applied. That is not how this enhancement works from the clear text of the guideline itself. I would like to go a little over, so I want to thank you very much for your presentation this morning. We'll thank Ms. Nakamura for her presentation, and this matter is submitted. Thank you.
judges: THOMAS, BRESS, ALBA